## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **MARCUS BROWN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| **vs.** | ) | |
| | ) | **Case No. 3:22-CV-2372-MAB** |
| **STEPHEN RITZ, MOHAMMED** | ) | |
| **SIDDIQUI, MICHAEL** | ) | |
| **MOLDENHAUER, AND WEXFORD** | ) | |
| **HEALTH SOURCES, INC.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM AND ORDER

**BEATTY, Magistrate Judge:**

This matter is currently before the Court on the motion for summary judgment on the issue of exhaustion filed by Defendants Stephen Ritz, Mohammed Siddiqui, Michael Moldenhauer, and Wexford Health Sources, Inc. (Doc. 48; *see also* Doc. 49). For the reasons set forth below, Defendants' motion for summary judgment on the issue of exhaustion is GRANTED in part and DENIED in part (Doc. 48).

### BACKGROUND

On May 10, 2022, Plaintiff Marcus Brown filed the instant lawsuit pursuant to 42 U.S.C. § 1983 alleging deprivations of his constitutional rights while incarcerated at Pontiac Correctional Center and Menard Correctional Center (*see* Docs. 1, 7, 16).[1] Plaintiff's complaint alleges that in February 2018, Plaintiff injured his shoulder while

---

[1] Plaintiff filed his complaint against employees at both Pontiac and Menard Correctional Centers (*see* Doc. 1). On October 11, 2022, the U.S. District Court for the Central District of Illinois dismissed Plaintiff's claims against the Defendants employed at Pontiac and transferred Plaintiff's case to this Court to resolve his claims against Wexford, Dr. Ritz, and the Defendants employed at Menard (Doc. 7).

lifting weights at Pontiac (Doc. 1 at p. 9; Doc. 16 at p. 2). After the injury occurred, Plaintiff claims staff at Pontiac did not adequately care for his shoulder (Doc. 1 at pp. 9-10).

Plaintiff was transferred to Menard in May 2018 (*Id.* at p. 13). On June 1, 2018, Plaintiff saw Nurse Practitioner Moldenhauer who referred him to Dr. Siddiqui (*Id.* at p. 14). Plaintiff saw Dr. Siddiqui on June 6, 2018, and requested an MRI and stronger pain medications (*Id.*). Dr. Siddiqui responded by ordering an x-ray, ultrasound, and physical therapy (*Id.*). Thereafter, Plaintiff was seen by Moldenhauer again on June 25, 2018 (Doc. 16 at p. 2). Plaintiff alleges that while he continued to request additional treatment, Dr. Siddiqui and Moldenhauer failed to provide further care or stronger pain medications (Doc. 1 at pp. 15-16).

Plaintiff claims he was diagnosed with a torn rotator cuff in 2021 (*Id.* at pp. 16, 45, 49, 58). However, despite his diagnosis and serious injury, Plaintiff alleges that Moldenhauer and Dr. Siddiqui refused to provide additional care (*Id.* at p. 16). According to Plaintiff, the decision to provide no further care is part of a continued practice by Wexford to "short cut" treatment in order to minimize costs (*Id.* at p. 18). Plaintiff's complaint also claims that Wexford's utilization management physician, Dr. Ritz, denied him additional care in furtherance of Wexford's policy of saving money by failing to properly treat inmates' injuries (*Id.* at pp. 12-13).

Following a threshold of Plaintiff's complaint pursuant to 28 U.S.C. § 1915A, this Court permitted Plaintiff to proceed on the following claims:

> Count 1: Eighth Amendment deliberate indifference claim against Dr. Ritz, Dr. Siddiqui, and Moldenhauer for denying and delaying Brown medical care for his torn rotator cuff.

Count 2:     Eighth Amendment deliberate indifference claim against
             Wexford Health Sources, Inc. for establishing cost cutting
             policies which denied Brown care for his torn rotator cuff.

(Doc. 16 at pp. 3-5).

Defendants filed a motion for summary judgment on the issue of exhaustion of

administrative remedies and a supporting memorandum on June 12, 2023 (Docs. 48, 49).

Plaintiff filed a response in opposition, along with an affidavit and several exhibits, on

July 5, 2023 (Docs. 51, 52). Defendants filed a reply in support of their motion two weeks

later (Doc. 53).

## LEGAL STANDARD

### I.     *Summary Judgment Standards*

Summary judgment is appropriate if the movant shows there is no genuine issue

as to any material fact and they are entitled to judgment as a matter of law. FED. R. CIV.

P. 56(a). In making a summary judgment determination, the Court "generally will

construe all facts and reasonable inferences in the light most favorable to the non-moving

party." *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013). In other

words, courts cannot resolve factual disputes in favor of the party seeking summary

judgment. *See Tolan v. Cotton*, 572 U.S. 650, 656 (2014) ("[A] judge's function at summary

judgment is not to weigh the evidence and determine the truth of the matter but to

determine whether there is a genuine issue for trial.") (internal quotation marks and

citation omitted). However, "[t]he nonmoving party must do more than simply show that

there is some metaphysical doubt as to the material facts." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010).

II.     *Exhaustion Requirements*

Pursuant to the Prison Litigation Reform Act, "[a] prisoner may not bring a federal suit about prison conditions unless he first has exhausted all available administrative remedies." *Pavey v. Conley*, 663 F.3d 899, 903 (7th Cir. 2011) (citing 42 U.S.C. § 1997e(a)). An administrative remedy was not exhausted if the prisoner failed to abide by the prison administration's procedures for pursuing relief. *Id.* In other words, to properly exhaust his or her administrative remedies, "a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002).

However, an inmate is not required to exhaust administrative remedies that are not actually available to him. *Pyles v. Nwaobasi*, 829 F.3d 860, 864 (7th Cir. 2016) ("Remedies that are genuinely unavailable or nonexistent need not be exhausted."). The Seventh Circuit has "found remedies unavailable in a number of instances in which the inmate, through no fault of his own, could not have accessed the grievance procedure." *Lanaghan v. Koch*, 902 F.3d 683, 688 (7th Cir. 2018); *see, e.g.*, *Ramirez v. Young*, 906 F.3d 530, 537 (7th Cir. 2018) (grievance procedure was unavailable where prisoner was not notified of the procedure's existence because of his lack of English proficiency). Additionally, failure to exhaust administrative remedies is an affirmative defense that the defendants carry the burden of proving. *Ramirez*, 906 F.3d at 533. "To meet their burden, the defendants must show beyond dispute that remedies were available." *Id.* at 534.

III.     *IDOC Grievance Procedures*

Individuals incarcerated within the Illinois Department of Corrections (IDOC) are required to follow the grievance process outlined in the Illinois Administrative Code to exhaust their administrative remedies. *See* 20 Ill. Admin. Code § 504.800, *et seq.* (2017). To initiate the normal grievance process, an inmate must file a grievance with their institutional counselor within 60 days of the discovery of the incident. *Id.* at § 504.810(a). After the counselor responds, an inmate may submit his grievance to a grievance officer, who is to report his or her findings and recommendations to the Chief Administrative Officer (the "warden") within two months. *Id.* at 504.830(e). The warden reviews the grievance officer's findings and recommendations, and then provides a written decision. *Id.* If an inmate is unsatisfied with the warden's decision, he has 30 days from the date of the warden's decision to appeal to the Administrative Review Board (ARB). *Id.* at § 504.850(a). The ARB submits a written report to the Director of the IDOC, who then makes a final decision on the grievance within six months, when reasonably feasible. *Id.* at § 504.850(e).

Alternatively, an inmate can request for his or her grievance to be handled on an emergency basis by submitting the grievance directly to the warden. *Id.* at § 504.840. If the warden determines the grievance should not be handled as an emergency, the inmate is notified in writing that he or she may resubmit the grievance in accordance with the standard grievance process. *Id.* at § 504.840(c). Conversely, if the warden determines the grievance is an emergency, the warden must expedite processing of the grievance and respond by indicating what action shall be or has been taken. *Id.* at § 504.840(b).

<u>DISCUSSION</u>

I.    <u>Plaintiff's Grievances</u>

Plaintiff and Defendants have provided several grievance records to the Court (*see generally* Docs. 1, 49-1, 49-2, 49-3). The Court has reviewed the grievances and associated records and has focused its analysis on grievances filed around the timeframe alleged in Plaintiff's complaint.

**A. Grievance 069799, dated 2/28/18 (Doc. 49-1, pp. 15-17)**

Plaintiff filed grievance 069799 on February 28, 2018, while he was incarcerated at Pontiac (Doc. 49-1 at pp. 15-17).[2] In that grievance, filed just a few weeks after his shoulder injury occurred, Plaintiff discussed the pain he was experiencing and questioned the adequacy of his treatment by the medical staff at Pontiac (*Id.* at p. 17). Plaintiff wrote that he "was never submitted for an MRI" and also emphasized that he was not given a sufficient amount of medication to treat him until his next follow up appointment (*Id.*).

The grievance officer responded to Plaintiff's grievance on April 3, 2018 (*Id.* at p. 16). The grievance officer's report states that Health Care Unit Administrator G. Davis reviewed Plaintiff's grievance and medical records and determined that Plaintiff was receiving appropriate treatment and medication (*Id.*) Based upon this information and a review of the record, the grievance officer recommended denying Plaintiff's grievance as

---

[2] Defendants only submitted the second page of grievance 069799 (*see* Doc. 49-1 at p. 17). This is perplexing because a review of the grievance records submitted by Defendants indicates the first page of this grievance should be in their records at IDOC 109 (*see* Doc. 49-1 at pp. 15-17). Yet, for reasons unknown to the Court, Defendants submitted the records related to this grievance contained at IDOC 107, 108, and 110, but not the first page of grievance 069799 that is presumably found at IDOC 109 (*Id.*). While it is true that Defendants ultimately conceded that this grievance was fully exhausted, for the sake of completeness it would have been preferable for the Court to have seen the first page of this grievance, if it was available.

moot (*Id.*). The warden concurred with the grievance officer's decision on April 4, 2018 (*Id.*). Plaintiff then appealed the decision to the ARB (*Id.* at p. 15). On May 31, 2018, the ARB denied Plaintiff's grievance and determined the issue was appropriately addressed by facility administration (*Id.*). The ARB stated, "Offender was seen on 2/10/18 and xray done on 2/13/18, no broken bones or discoloration. Given Motrin and Robaxin for discomfort." (*Id.*).

Defendants have conceded that grievance 069799 was fully exhausted on the merits (Doc. 49 at p. 12). Therefore, the Court will consider grievance 069799 when analyzing whether Plaintiff exhausted his administrative remedies as to the claims raised in this lawsuit.

**B. Emergency Grievance #2-8-21, dated 8/1/21 (Doc. 49-1, pp. 13-14)**

Plaintiff filed another grievance on August 1, 2021 (Doc. 49-1 at pp. 13-14). In this grievance, Plaintiff stated, "I'm writing this Grievance on the behalf of the malicious and unethical medical practice, unprofessionalism of health care treatment! I have been attempting to get medical assistance, pain relief for over 2 and ½ years for a injury I sustain in Pontiac." (*Id.* at p. 13). Plaintiff continued by stating that he was diagnosed with a torn rotator cuff and needed surgery (*Id.* at p. 14). Plaintiff also wrote that he has submitted numerous slips to the doctor at Menard but has not been seen and continues to suffer from severe pain (*Id.*). Plaintiff concluded by again requesting to be seen by a doctor and receive adequate medication and treatment (*Id.*).

The warden deemed Plaintiff's grievance to be an emergency on August 3, 2021 (*Id.* at p. 11). The grievance officer received and forwarded the grievance to the Health

Care Unit one day later (*Id.*). The grievance officer wrote that "Dr. Siddiqui, Facility Medical Director and Angela Crain, RN, BSN, HCUA advised that upon review of the individual in custody's medical records it appears the patient has right shoulder pain since weightlifting injury two years ago." (*Id.* at p. 12). The response then noted that an MRI of Plaintiff's shoulder occurred on June 27, 2021, and that a PA's referral to Dr. Tres Brown had been approved by "Wexford UM" but had not yet been scheduled (*Id.*). Accordingly, the grievance officer recommended that Plaintiff's grievance be considered moot (*Id.* at p. 11). The warden concurred in the grievance officer's recommendation on September 15, 2021 (*Id.*). On November 4, 2021, the ARB received Plaintiff's appeal (*Id.* at p. 10). Several days later, the ARB denied Plaintiff's appeal because it was received more than 30 days past the date of the warden's decision (*Id.*).

Here, the question is whether Plaintiff exhausted his administrative remedies as to this grievance in light of the ARB's denial based upon a procedural ground. Generally, to exhaust one's administrative remedies, an inmate must comply with filing and administrative appeal deadlines. *See Pozo*, 286 F.3d at 1025. Consequently, in most situations when the ARB rejects an appeal as untimely without addressing the merits, an inmate cannot be said to have exhausted his administrative remedies. *Id.* ("Pozo filed a timely and sufficient complaint but did not file a timely appeal. He therefore failed to exhaust his administrative remedies, and his federal suit must be dismissed.").

However, one major exception to the procedural exhaustion requirements applicable to inmate claims is that an inmate may be excused from exhausting his or her administrative remedies if the grievance process is "not available." For instance, "prison

officials cannot prevent an inmate from exhausting administrative remedies by ignoring properly filed grievances or by impeding the use of the grievance system by withholding necessary forms. Such barriers render administrative remedies not available, and an inmate does not forfeit his ability to file suit by failing to exhaust unavailable remedies." *Reierson v. Monroe*, No. 09C3753, 2010 WL 748125, at *4 (N.D. Ill. Feb. 26, 2010). Similarly, when an inmate failed to exhaust his administrative remedies within the prescribed timeframe due to alleged physical incapacity and/or intimidation from prison officials, the Seventh Circuit held that "administrative remedies were unavailable to him, and thus not mandatory[.]" *Kincaid v. Sangamon Cnty.*, 435 F. App'x 533, 536 (7th Cir. 2011).

Here, Plaintiff argues the only reason he failed to timely appeal emergency grievance 2-8-21 to the ARB is because he was placed in segregation just a few days before his administrative appeal deadline and not provided with the necessary materials to timely file his appeal while in segregation (Doc. 52 at pp. 12-13). And although Plaintiff's response does not include proper citations to the record in support of this contention, Plaintiff has provided a sworn affidavit and supporting documentation that he claims justifies his position (*see* Doc. 51). Specifically, Plaintiff submitted: (1) an affidavit he wrote which states that the only reason he failed to timely file his administrative appeal was because of his placement in segregation (*Id.* at p. 8); (2) a disciplinary report demonstrating his placement in investigative status just days prior to his appeal deadline (*Id.* at p. 13); (3) a grievance filed on October 31, 2021, complaining of his placement in segregation and the fact that he wasn't provided with his legal materials (*Id.* at pp. 15-

16); and (4) an affidavit from another inmate stating that he provided Plaintiff a pen on October 31, 2021 (*Id.* at p. 7).

Defendants' reply brief denied Plaintiff's allegations because, among other things, they were not supported by appropriate citations (*See* Doc. 53). But Defendants did not address Plaintiff's factual allegations head on and controvert them or deny them. Instead, Defendants took issue with Plaintiff's citations to the record. However, Plaintiff did provide evidentiary support in the form of a sworn affidavit and supporting documentation contemporaneously with his response in opposition (*See* Docs. 51, 52). Failure to exhaust administrative remedies is an affirmative defense, meaning Defendants bore the burden of proving that Plaintiff had available administrative remedies that he did not utilize. *See Dale v. Lappin*, 376 F.3d 652, 656 (7th Cir. 2004). Here, in light of the evidence provided by Plaintiff (Doc. 51), the Court must deny Defendants' request, as written, for summary judgment based upon Plaintiff's purported failure to timely appeal this grievance to the ARB.

Because Plaintiff has indicated that the grievance process was unavailable to him, this creates a factual dispute and a *Pavey* hearing may be necessary to resolve this dispute. *See Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008). As such, if Defendants wish to request an evidentiary hearing on this discreet issue, they must do so within 14 days. If a hearing is requested, Defendants shall identify the witnesses they intend to call and a general summary of the subject matter of each witness.[3]

---

[3] If Defendants opt not to pursue their affirmative defense of exhaustion on this discreet issue or if Defendants ultimately determine that an evidentiary hearing is not necessary, the Court will enter a scheduling order for merits-based discovery to begin.

**C. Emergency Grievance #285-3-22, dated 3/29/22 (Doc. 49-1, pp. 5-9)**

Plaintiff filed emergency grievance 285-3-22 on March 29, 2022 (Doc. 49-1 at pp. 6-7). In the grievance, Plaintiff discusses how he injured his shoulder over four years ago and has not been properly treated (*Id.* at p. 6). Plaintiff said he is still suffering from the injury and the pain impacts his ability to do basic activities such as showering, exercising, and washing clothes (*Id.* at p. 7). Plaintiff wrote that he was recommended by the medical doctor to have physical therapy, but he still has not received any (*Id.*). Plaintiff also claimed that he was told no one could authorize any meaningful medical treatment because Menard did not have a medical director (*Id.*).

Plaintiff's grievance was deemed an emergency on April 1, 2022 (*Id.* at p. 6). Thereafter, the grievance officer forwarded the emergency grievance to the HCU for review on April 4, 2022 (*Id.* at p. 8). Kimberly Martin, DON, RN, BSN advised the grievance officer that Plaintiff's complaints had been addressed in grievance responses 346-6-18 and 151-7-20, and that Plaintiff had been evaluated by a physical therapist in December 2020 and completed four weeks of physical therapy on March 19, 2021 (*Id.* at pp. 8-9). Ms. Martin stated that Plaintiff received an MRI as recommended by an offsite orthopedic specialist and also went to a follow up appointment with the orthopedic specialist after his MRI (*Id.* at p. 9). Plaintiff was given a home exercise program and steroid shot but was not prescribed additional pain medication and was determined not to be a good candidate for surgery (*Id.*). Ms. Martin also noted that Plaintiff saw an orthopedic specialist again several months later and had been seen by a sick call nurse for his shoulder on March 16 and April 6, 2022 (*Id.*).

Based on the HCU's response, the grievance officer recommended that Plaintiff's grievance be deemed moot (*Id.* at p. 8). The warden concurred in the grievance officer's recommendation on April 18, 2022 (*Id.*). Plaintiff appealed to the ARB, who denied his grievance on May 6, 2022 (*Id.* at p. 5). Specifically, the ARB denied his appeal because it was untimely, "as the date of incident was February 2018 and there were no other recent incident dates mentioned in the grievance. That does not meet the 60-day reporting window allowed. No review." (*Id.*).

Certainly, if Plaintiff submitted this emergency grievance solely to grieve the treatment he received in 2018 immediately following his shoulder injury, there can be no doubt that the ARB correctly denied this grievance as untimely filed in violation of § 504.810(a). However, the question is whether emergency grievance 285-3-22 was only grieving Plaintiff's treatment for his injury in 2018, or if it was also grieving his continued pain and lack of treatment throughout the years.

A grievance that challenges a continuing wrong, as opposed to a particular incident, is not untimely just because the first occurrence of the wrong occurred more than 60 days before the grievance was filed. *See Wilder v. Sutton*, 310 F. App'x 10, 15 (7th Cir. 2009). In *Wilder*, the plaintiff filed grievances over the course of several months, seeking permission to worship with Wiccan utensils. *Id.* The defendants argued the plaintiff's grievances were untimely filed because they involved events that were more than 60 days old. *Id.* The Seventh Circuit squarely rejected this argument and emphasized that the plaintiff's grievances were not about a specific incident, but rather alleged a "continuing wrong." *Id.* Therefore, the Seventh Circuit concluded that "[e]ach missed

opportunity to worship gives rise to a separate complaint, and so whether Wilder filed a grievance in November, February, or March, he was within sixty days of an incident underlying his complaint." *Id.*; *see also Turley v. Rednour*, 729 F.3d 645, 650 (7th Cir. 2013) ("In order to exhaust their remedies, prisoners need not file multiple, successive grievances raising the same issue (such as prison conditions or policies) if the objectionable condition is continuing.").

As in *Wilder*, it is evident that Plaintiff was not just grieving the treatment he received in February 2018 and was instead grieving the continued lack of adequate care. For example, Plaintiff's grievance complains of his continued suffering due to insufficient pain medication and the lack of follow-up treatment (Doc. 49-1 at p. 7). Additionally, Plaintiff's grievance complains that he never received any physical therapy to date (*Id.*). While the veracity of this statement is a question for another day, the content of it demonstrates that Plaintiff was grieving the continuing denial of adequate medical treatment and not just challenging the treatment he received in February 2018. *See Laktas v. Wexford Health Sources, Inc.*, No. 18-CV-1299-NJR-RJD, 2019 WL 3928690, at *3 (S.D. Ill. Aug. 20, 2019) ("[I]t was improper for the ARB to find that these grievances were untimely because Laktas could have begun the grievance process at any time that the denial of medical care was ongoing."). Consequently, because Defendants have failed to adequately address and overcome the continuing violation doctrine, the Court finds Defendants failed to meet their burden of demonstrating that this emergency grievance was not exhausted.

**D. Additional grievances that were not exhausted**

Finally, the Court notes that the record contains several other, potentially relevant grievances that were not discussed at length by either party. For instance, grievance 346-6-18, dated June 25, 2018, was attached to Plaintiff's complaint (Doc. 1 at pp. 37-38). In that grievance, Plaintiff complained of the adequacy of treatment for his shoulder injury and stated that Dr. Siddiqui should have ordered an MRI, not an x-ray, since there was a chance his injury was due to a torn ligament or muscle (*Id.*). Similarly, grievance 266-7-18, dated July 19, 2018, was also attached to Plaintiff's complaint (Doc. 1 at pp. 54-55). In that grievance, Plaintiff continued to complain of the inadequate treatment he received and also stated, "[a]nother fable was stated when N/P Moldenhauer stated I refuse Naproxen, Tylenol, and Mobic! I explain to the N/P that the medication was not doing nothing for the pain I experience daily." (*Id.*). Finally, emergency grievance 35-9-21, filed on September 5, 2021, was also attached to Plaintiff's complaint (Doc. 1 at pp. 59-60). In emergency grievance 35-9-21, Plaintiff inquired as to why he had not heard back on emergency grievance 2-8-21 and why he was not being scheduled for physical therapy or sick call (*Id.*).

Crucially, Defendants have submitted evidence tending to demonstrate that these grievances were not exhausted. Most notably, Defendants submitted an affidavit from the ARB's custodian of records, along with a log of Plaintiff's grievance filings to the ARB (Doc. 49-1 at pp. 1-2), which indicates that none of these grievances were filed with the ARB. As such, the Court finds that Plaintiff has not exhausted his administrative remedies as to these records and they will not be considered in the Court's analysis.

## II.   _Analysis_

Defendants first argue Dr. Siddiqui, Dr. Ritz, and Moldenhauer are entitled to summary judgment on the issue of exhaustion because Plaintiff's grievances from his time at Menard were denied by the ARB on procedural grounds and grievance 069799 did not address any of the remaining Defendants (Doc. 49 at pp. 9-12). Specifically, as to Dr. Siddiqui and Moldenhauer, Defendants point out that they were not employed at Pontiac and therefore, Plaintiff's grievance filed there could not have included them (_Id._ at p. 12). Additionally, Defendants argue Plaintiff did not exhaust his administrative remedies as it relates to his current complaints against Wexford and Dr. Ritz because they were not identified in any fully exhausted grievance (_Id._ at pp. 11-12). Finally, Defendants contend that even if grievances 2-8-21 and 285-3-22 were fully exhausted, they still failed to identify his claims against Moldenhauer, Dr. Ritz, and Wexford (_Id._ at p. 13).

As discussed above, Defendants have failed to meet their burden of demonstrating that Plaintiff did not comply with filing and appeal deadlines as it relates to grievances 069799, 2-8-21, and 285-3-22. However, following required procedural deadlines alone is not enough to exhaust one's administrative remedies. Plaintiff was also required to comply with § 504.810(c), which provides that a "grievance shall contain factual details regarding each aspect of the offender's complaint, including what happened, when, where and the name of each person who is the subject of or who is otherwise involved in the complaint. This provision does not preclude an offender from filing a grievance when the names of individuals are not known, but the offender must include as much descriptive information about the individual as possible." Consequently, Defendants

Wexford, Dr. Ritz, and Moldenhauer argue that they are also entitled to summary judgment for the failure to exhaust because Plaintiff's grievances failed to include any descriptive information of them.

       a.  *Dr. Siddiqui*

Tellingly, Defendants have conceded that if emergency grievances 2-8-21 and 285-3-22 were found to be improperly denied on procedural grounds, Plaintiff's references to "medical doctor" and "medical director" were likely sufficient to describe Dr. Siddiqui (*see* Doc. 49 at p. 13). The Court agrees and finds Plaintiff exhausted his administrative remedies as it relates to his Eighth Amendment deliberate indifference claim against Dr. Siddiqui. Therefore, Dr. Siddiqui's motion for summary judgment based upon Plaintiff's failure to exhaust administrative remedies is DENIED.

       b.  *Wexford*

Next, the Court considers whether Plaintiff adequately grieved the issues surrounding his claim against Wexford. "When a Wexford policy or practice is at issue, courts have held that grieving activities for which Wexford was responsible and/or involved in the decision-making process are generally sufficient to put the prison on notice that the plaintiff was grieving a Wexford policy or practice." *Diaz v. Baldwin*, No. 18-CV-1426-RJD, 2021 WL 1401463, at *3 (S.D. Ill. Apr. 14, 2021). However, when a grievance fails to "include any reference to a particular policy or practice attributable to Wexford," courts have found the grievance insufficient to put the corporate entity (Wexford) on notice. *Id.*

Here, grievances 2-8-21 and 285-3-22 both reference activities Wexford was responsible for. Specifically, in emergency grievance 2-8-21, Plaintiff stated "I'm writing this Grievance on the behalf of the malicious and unethical medical practice, unprofessionalism of health care treatment! I have been attempting to get medical assistance, pain relief for over 2 and ½ years for a injury I sustain in Pontiac." (Doc. 49-1 at p. 13). Similarly, in emergency grievance 285-3-22, Plaintiff complained about his lack of care by medical staff for years and also grieved Wexford's purported policy of not having a way to authorize meaningful medical treatment without a medical director (*Id.* at pp. 6-7). While Plaintiff never directly stated Wexford in either grievance, he grieved about inadequate medical treatment and the refusal to authorize MRIs and physical therapy, both of which are activities for which Wexford was responsible for and/or involved in the decision-making process. *See, e.g., Armbruster v. Wexford Health Sources, Inc.*, No. 16-CV-0544-MJR-SCW, 2017 WL 2418724, at *6 (S.D. Ill. June 5, 2017). "Simply put, [Plaintiff's] grievance served its purpose of providing prison officials a reasonable opportunity to address his complaints." *Conley v. Birch*, No. 11-CV-0013-MJR-SCW, 2012 WL 4202702, at *5 (S.D. Ill. Sept. 19, 2012). *See also Loving v. Gomez*, No. 19-CV-00029, 2022 WL 3026932, at *4 (N.D. Ill. Aug. 1, 2022) ("It is thus well-settled that an inmate does not need to name Wexford in order to exhaust administrative remedies against it.") (internal citations omitted). Consequently, the Court finds that Plaintiff has exhausted his administrative remedies as it relates to Wexford, and Wexford's motion is DENIED.

c. _Dr. Ritz_

Dr. Ritz is employed as a utilization management physician for Wexford (Doc. 16 at p. 3; Doc. 1 at pp. 28 & 31). Plaintiff contends that Dr. Ritz was responsible for reviewing and then denying recommendations to permit him to see an outside specialist (Doc. 1 at pp. 12-13). Plaintiff claims that Dr. Ritz chose to deny the recommendations to further Wexford's policy or practice of saving money by cutting corners on medical care (_Id._ at p. 13). In response, Defendants argue they are entitled to summary judgment on Plaintiff's claim against Dr. Ritz because he was not identified in any of Plaintiff's grievances (_see generally_ Doc. 49 at pp. 9-13).

Ultimately, the Court finds Plaintiff's grievances failed to adequately identify or allude to the issues surrounding his claim against Dr. Ritz. For one, assuming grievance 069799 mentioned Dr. Ritz by name on the first page (which was not provided), Plaintiff's complaints in that grievance could only have challenged Dr. Ritz's denials that occurred while Plaintiff was at Pontiac (_see_ Doc. 1 at pp. 28 & 31). Crucially, this was not a situation in which a denial of outside care at Pontiac also led to similar denials at Menard in some sort of continuing violation.[4] Instead, after the Pontiac denials, any future denials would involve different requests from medical staff at a different institution. In other words, grievance 069799 could not have challenged or discussed any potential, future denials by

---

[4] "In order to exhaust their remedies, prisoners need not file multiple, successive grievances raising the same issue (such as prison conditions or policies) if the objectionable condition is continuing." _Turley v. Rednour_, 729 F.3d 645, 650 (7th Cir. 2013). However, "[s]eparate complaints about particular incidents are only required if the underlying facts or the complaints are different." _Id._ In this case, given the differences in the underlying facts as a result of Plaintiff's transfer, any potential denial while at Menard would have been distinct from those at Pontiac.

Dr. Ritz because those denials would have occurred after Plaintiff was transferred to Menard and would have involved different medical recommendations made by different doctors at a different institution.[5] *See Nance v. Wexford Health Sources, Inc.*, No. 16-CV-875-NJR, 2020 WL 607113, at *4 (S.D. Ill. Feb. 7, 2020) ("These three distinct periods do not constitute one continuing violation because they include different forms of deliberate indifference against different defendants."). Thus, even if Plaintiff had grieved about Dr. Ritz's denials of care in grievance 069799, those denials could not have created a continuing violation following his transfer to Menard. And as the Central District previously explained, Plaintiff's claims against Dr. Ritz that were based upon actions that occurred while he was housed at Pontiac are barred by the applicable statute of limitations (*see* Doc. 7 at p. 4).

In order to properly grieve his claims against Dr. Ritz based upon any denials Dr. Ritz may have made while Plaintiff was at Menard, Plaintiff needed to identify his challenges against Dr. Ritz (or actions attributable to him) in a new grievance. Pertinently, grievances 2-8-21 and 285-3-22 do not identify, reference, or allude to Dr. Ritz or any actions attributable to him (*see generally* Doc. 49-1 at pp. 6-7 & 13-14). While grievance 2-8-21 does mention seeing an outside orthopedic specialist, it does so in the context of saying he was approved to see a specialist and approved for an MRI (*Id.* at p. 14). It does not discuss or claim that medical recommendations for him to see an outside specialist

---

[5] In the absence of a continuing violation, courts adhere to the general rule that grievances cannot exhaust administrative remedies for actions that happen after they were filed. *See Palmer v. Fenoglio*, 510 F. App'x 476, 478 (7th Cir. 2013); *Todd v. Shaw*, No. 3:17-CV-359-DRH-DGW, 2018 WL 5904455, at *4 (S.D. Ill. Aug. 27, 2018), *report and recommendation adopted*, No. 17-CV-0359-DRH, 2018 WL 4679961 (S.D. Ill. Sept. 27, 2018).

were being denied by a reviewing authority within Wexford. Similarly, although grievance 285-3-22 discusses Plaintiff being recommended to see a physical therapist, it does not complain that this recommendation was denied later on by Dr. Ritz or someone in an oversight position (*Id.* at p. 7). Rather, it appears to be a complaint that his approved physical therapy was not yet scheduled (*Id.*).

For these reasons, the Court finds Plaintiff has failed to exhaust his administrative remedies on any claim against Dr. Ritz that has not been barred by the statute of limitations. Accordingly, Dr. Ritz's motion for summary judgment based upon Plaintiff's failure to exhaust his administrative remedies is GRANTED.[6]

### d. *Moldenhauer*

Finally, Defendants argue Plaintiff failed to identify Moldenhauer in any procedurally exhausted grievance (Doc. 49 at pp. 9-11 & 13). For the reasons discussed below, the Court agrees and finds Plaintiff failed to sufficiently identify or allude to Moldenhauer in grievances 2-8-21 and 285-3-22 as required by § 504.810(c).

Grievance 2-8-21 generally discusses Plaintiff's ongoing shoulder issues and his frustrations with his inability to be seen and treated by "the doctor" (Doc. 49-1 at pp. 13-14). Nothing in this grievance alludes to Moldenhauer or any nurse, and nothing alleges or complains that nursing staff at Menard is the reason he was prevented from seeing a

---

[6] To avoid any confusion, the Court emphasizes the distinction between the claims against Dr. Ritz and Wexford. The Court's preliminary review order makes clear that Plaintiff's second count, which dealt with cost-cutting policies, was only permitted to proceed against Wexford (Doc. 16 at pp. 3-5). This not only helps explain why the Court has reached different results as to Wexford and Dr. Ritz, but also makes clear that Plaintiff's claim against Dr. Ritz was based upon his individual denials of outside treatment, not upon a policy of him doing so.

doctor (*Id.*). Similarly, grievance 285-3-22 discusses Plaintiff's shoulder injury and lack of care but again makes no mention of or reference to Moldenhauer or any nurse at Menard (Doc. 49-1 at pp. 6-7). Put simply, Plaintiff's procedurally exhausted grievances[7] do not provide any indication that Moldenhauer was their target and they do not contain any implication of wrongdoing against Moldenhauer. *See Roberts v. Neal*, 745 F.3d 232, 235–36 (7th Cir. 2014) ("The grievance has a fatal defect, but it lies elsewhere; it lies in the absence of anything in it to indicate that Davis was the target."); *Cunningham v. Isaacs*, No. 3:21-CV-247-MAB, 2022 WL 3026854, at *3 (S.D. Ill. Aug. 1, 2022) ("In short, the grievance must provide sufficient information to identify the defendant as the target of the complaint or to implicate them in the alleged wrongdoing."); *Walker v. Harris,* No. 3:19-CV-00664-MAB, 2021 WL 3287832, at *4 (S.D. Ill. Aug. 2, 2021) ("Additionally, even if Plaintiff had properly submitted this grievance through the appropriate institutional channels and then to the ARB prior to filing this lawsuit, the contents of this grievance are not specific enough to exhaust the claim against Defendant Harris."). Accordingly, Moldenhauer's motion for summary judgment based upon Plaintiff's failure to exhaust his administrative is GRANTED.

## CONCLUSION

The motion for summary judgment on the issue of exhaustion filed by Defendants

---

[7] Admittedly, grievance 266-7-18 discusses Moldenhauer and alleges that Moldenhauer falsely claimed that Plaintiff refused care (Doc. 1 at pp. 54-55). However, this grievance was not fully exhausted as it was not appealed to the ARB (*see* Doc. 49-1 at pp. 1-2). Moreover, allegations that staff at Menard forged his refusal are unquestionably distinct from his current allegations related to medical treatment, such that they cannot be considered covered under his previous grievances pursuant to the continuing violation doctrine. *See Venson v. Gregson*, No. 3:18-CV-2185-MAB, 2021 WL 2948817, at *9 (S.D. Ill. July 14, 2021) (The failure to take the plaintiff for medical care is a distinct claim from the failure to act on a request for transfer or a protective order, and "[t]he two situations cannot be lumped together as one continuing violation.")

is **GRANTED** in part and **DENIED** in part (Docs. 48, 49). Specifically, it is GRANTED as to Dr. Ritz and Moldenhauer and DENIED as to Dr. Siddiqui and Wexford. Dr. Ritz and Moldenhauer are **DISMISSED with prejudice** as Defendants in this lawsuit, and judgment will be entered in their favor at the conclusion of this case.

Additionally, Defendants must file a notice requesting a *Pavey* hearing within **14 days** of this Order if they wish to continue challenging Plaintiff's exhaustion of emergency grievance 2-8-21. If a hearing is requested, Defendants shall identify the witnesses they intend to call to testify and a general summary of the subject matter of each witness. If Defendants opt not to request a hearing, the Court will enter a scheduling order for discovery on the merits of this case.

**IT IS SO ORDERED.**

**DATED:**  March 18, 2024

s/ **Mark A. Beatty**
**MARK A. BEATTY**
**United States Magistrate Judge**