IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| MARCUS BROWN, ) | |
| ) | |
| Plaintiff, ) | |
| vs. ) | |
| ) | Case No. 3:22-CV-2372-MAB |
| MOHAMMED SIDDIQUI and ) | |
| WEXFORD HEALTH SOURCES, INC., ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM AND ORDER**

**BEATTY, Magistrate Judge:**

This matter is currently before the Court on Plaintiff Marcus Brown's Motion to Conduct Additional Limited Discovery and Temporarily Stay Summary Judgment Briefing Schedule (Doc. 120) and Plaintiff's Motion to Supplement Summary Judgment Record (Doc. 126). For the reasons explained below, Plaintiff's Motion to Conduct Limited Additional Discovery is GRANTED (Doc. 120) and Plaintiff's Motion to Supplement Summary Judgment Record is DENIED as MOOT (Doc. 126). Additionally, for the reasons discussed below, Defendants' Motion for Summary Judgment is DENIED as MOOT without prejudice (Doc. 110). Defendants may file a new or renewed motion for summary judgment after the limited, additional discovery discussed in this Order has been completed.

BACKGROUND

On May 10, 2022, Plaintiff Marcus Brown filed the instant lawsuit pursuant to 42 U.S.C. § 1983 alleging deprivations of his constitutional rights while incarcerated at

Pontiac Correctional Center and Menard Correctional Center (*see* Docs. 1, 7, 16).[1]

Plaintiff's Complaint alleges that he injured his shoulder at Pontiac in February 2018

before he was transferred to Menard in May 2018 (Doc. 1 at pp. 9-13). The Complaint then

alleges certain constitutional violations committed by Defendants Wexford and Dr.

Siddiqui related to the care of Plaintiff's shoulder (*see generally* Docs. 1, 16).[2]

Following a threshold review of Plaintiff's Complaint pursuant to 28 U.S.C. §

1915A, this Court permitted Plaintiff to proceed on the following claims:

> Count 1: Eighth Amendment deliberate indifference claim against Dr. Ritz, Dr. Siddiqui, and Moldenhauer for denying and delaying Brown medical care for his torn rotator cuff.

> Count 2: Eighth Amendment deliberate indifference claim against Wexford Health Sources, Inc. for establishing cost cutting policies which denied Brown care for his torn rotator cuff.

(Doc. 16 at pp. 3-5).

Defendants subsequently filed a Motion for Summary Judgment for Failure to

Exhaust Administrative Remedies (Doc. 48), which was granted as to Defendants

Moldenhauer and Dr. Ritz and denied as to Defendants Wexford and Dr. Siddiqui (*Id.* at

pp. 21-22). Consequently, a Final Scheduling Order was entered that set a discovery

deadline of February 10, 2025, and a dispositive motion deadline of March 10, 2025 (Doc.

60). Discovery disputes and delays ensued, such that those deadlines were extended on

---

[1] Plaintiff filed his Complaint against employees at both Pontiac and Menard Correctional Centers (*see* Doc. 1). On October 11, 2022, the U.S. District Court for the Central District of Illinois dismissed Plaintiff's claims against the Defendants employed at Pontiac and transferred Plaintiff's case to this Court to resolve his claims against Dr. Siddiqui, Wexford, and several other Defendants employed at Menard (Doc. 7).

[2] Detailed summaries of Plaintiff's claims and this case's procedural history can be found in the Court's Merit Review Order (Doc. 16) and the Court's Order granting in part and denying in part Defendants' exhaustion-based summary judgment motion (Doc. 58; *see also* Doc. 48).

several occasions (*see, e.g.*, Docs. 82, 83, 87, 91, 102).

On July 9, 2025, the Court granted Plaintiff's Supplemental Motion to Appoint Counsel (Doc. 109). One day later, Defendants filed a Motion for Summary Judgment (Doc. 110) and supporting memorandum (Doc. 111). While awaiting the appearance of newly recruited counsel, Plaintiff moved to extend his response deadline to Defendants' motion (Doc. 114). However, rather than simply grant Plaintiff's requested 90-day extension, the Court stayed Plaintiff's deadline to respond to Defendants' summary judgment motion until recruited counsel was given an adequate opportunity to familiarize himself with the case (Doc. 115).

At a Status Conference held on August 14, 2025, Plaintiff's recruited counsel appeared and indicated he has received all discovery exchanged to date (Doc. 119). As a result, the Court lifted the stay on responding to Defendants' summary judgment motion and set a response deadline of October 17, 2025 (*Id.*). At that time, Plaintiff's counsel also requested to reopen discovery for the limited purpose of conducting depositions of Dr. Siddiqui and a Wexford Rule 30(b)(6) representative (*Id.*). Defendants objected to the request and the Court indicated that it was not inclined to reopen discovery given the age and posture of this case (*Id.*).[3]

---

[3] At the status conference, the Court explained that given the age and the current posture of this case, it had decided to recruit counsel to assist Plaintiff with the summary judgment briefing and trial, if necessary. However, for the reasons explained below, the Court is now convinced that good cause exists and it would be too prejudicial to not allow Plaintiff to conduct very limited discovery. The Court recognizes that Defendants will incur prejudice as well by expending additional time and resources preparing their witnesses for deposition and refiling their summary judgment motion. However, after carefully considering the parties' briefs, the balance weighs in favor of Plaintiff and limited discovery will be permitted.

On August 22, 2025, Plaintiff filed the instant Motion to Conduct Limited Additional Discovery and Temporarily Stay Summary Judgment Briefing Schedule (Doc. 120). Defendants timely filed a Response in Opposition (Doc. 121) and Plaintiff timely filed a Reply in Support thereafter (Doc. 122). In conformance with the Court's prior Order lifting the stay (Doc. 119), Plaintiff also filed a Response in Opposition to Defendants' Motion for Summary Judgment on October 17, 2025 (Doc 124). Defendants timely filed a Reply in Support of their motion one week later (Doc. 125). Finally, on November 7, 2025, Plaintiff filed a Motion to Supplement Summary Judgment Record, as well as a supporting exhibit containing medical records (Docs. 126, 126-1). Defendants filed their Response in Opposition on November 21, 2025 (Doc. 127).

## LEGAL STANDARD

Federal Rule of Civil Procedure 16(b)(4) states, "A schedule may be modified only for good cause and with the judge's consent." In other words, Rule 16(b)(4) allows this Court to modify a scheduling order when good cause is shown. *Id.*; *see also Smart v. Int'l Broth. of Elec. Workers, Local 702*, 453 Fed. Appx. 650, 655 (7th Cir. 2011). "In making a Rule 16(b) good-cause determination, the primary consideration for district courts is the diligence of the party seeking amendment." *Alioto v. Town of Lisbon*, 651 F.3d 715, 720 (7th Cir. 2011). *See also Allen v. Brown Advisory, LLC*, 41 F.4th 843, 852–53 (7th Cir. 2022) ("The central consideration in assessing whether good cause exists is the diligence of the party seeking to amend [the scheduling order].").

Relatedly, pursuant to Federal Rule of Civil Procedure 56(d), after a party moves for summary judgment:

If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:

(1) defer considering the motion or deny it;

(2) ***allow time to obtain affidavits or declarations or to take discovery***; or

(3) issue any other appropriate order.

(emphasis added). Accordingly, "[a] party seeking relief under Rule 56(d) must show by affidavit or declaration specific reasons discovery should be extended, which requires more than a fond hope that more fishing might net some good evidence." *Smith v. OSF HealthCare Sys.*, 933 F.3d 859, 864 (7th Cir. 2019).

## DISCUSSION

Plaintiff's Motion to Conduct Limited Additional Discovery seeks leave to: (1) depose Dr. Siddiqui; (2) depose a Wexford representative pursuant to Rule 30(b)(6); and (3) discover and disclose additional medical records from outsider providers (Doc. 120). The Court addresses each of these requests in turn.

### I.     *Deposition of Dr. Siddiqui*

Plaintiff seeks leave to depose Dr. Siddiqui because Plaintiff believes Dr. Siddiqui's deposition will be indispensable to establishing his state of mind, which is a necessary component of Plaintiff's deliberate indifference claim against him (*see* Doc. 120 at pp. 6-7). Plaintiff further avers that good cause exists to allow Dr. Siddiqui's deposition at this time, and any minimal prejudice to Defendants is substantially outweighed by the significant prejudice Plaintiff would face were he not allowed to depose Dr. Siddiqui (*Id.* at pp. 8-9). In response, Defendants contend that Plaintiff has not demonstrated good

cause to excuse his previous failure to depose Dr. Siddiqui while proceeding *pro se* (Doc. 121 at pp. 1-5). In addition, Defendants argue that deposing Dr. Siddiqui is not necessary and will be unduly prejudicial (Doc. 121 at pp. 6, 9-10).

For the following reasons, the Court finds good cause exists to allow Plaintiff to depose Dr. Siddiqui. First and foremost, the record demonstrates that both Plaintiff and his recruited counsel were diligent in conducting discovery. Regarding Plaintiff, he was proceeding *pro se* throughout the course of discovery (*see* Docs. 91, 109). Pertinently, in addition to the difficulties that any incarcerated *pro se* litigant would face in deposing an opposing party, Plaintiff established numerous, additional complexities unique to his situation: (1) his suffering from a mental illness (*see, e.g.*, Doc. 98 at p. 4); (2) his placement on crisis watch and resulting loss of property (*Id.* at p. 3, Doc. 104 at p. 2); and (3) his reliance on other inmates to assist him (*see, e.g.*, Doc. 98 at p. 3). Consequently, based upon both his unique personal circumstances as well as the general hurdles Plaintiff faced as an incarcerated *pro se* litigant, the Court finds that Plaintiff's failure to depose Dr. Siddiqui was not due to a lack of diligence. *See Perez v. Fenoglio*, 792 F.3d 768, 785 (7th Cir. 2015) ("Taking depositions, conducting witness examinations, applying the rules of evidence, and making opening statements are beyond the ability of most pro se litigants to successfully carry out.").

In response, Defendants contend that regardless of the difficulties Plaintiff faced, he could have attempted to conduct Dr. Siddiqui's deposition by alternative means such as by written question (*see* Doc. 121 at p. 6). The Court does not find the existence of a theoretical alternative demonstrates a lack of diligence on Plaintiff's part. For one, this

contention does not account for the realities of Plaintiff's situation, which included his placement on crisis watch and his then-ongoing mental health concerns (*see, e.g.*, Doc. 103 at p. 2). Moreover, conducting a deposition by written questions would have created another set of challenges for Plaintiff, including: (1) preparing appropriate written questions; (2) arranging their deposition; and (3) paying for expenses associated with taking a written deposition including officer fees, costs, witness fees, and the cost of the deposition transcript. *See Winger v. Jeffreys*, 19-CV-00236-SPM, 2022 WL 4467644, at *3 (S.D. Ill. Sept. 26, 2022) (detailing what would have been required for the inmate litigant to have conducted a deposition by written questions). In short, the Court sees no reason why the theoretical, yet equally challenging, option of conducting a deposition by alternative means would suffice here. *See, e.g.*, *Miller v. Campanella*, 794 F.3d 878, 880 (7th Cir. 2015) ("Taking depositions, conducting witness examinations, applying the rules of evidence, and making opening statements are beyond the ability of most pro se litigants to successfully carry out."); *Navejar v. Iyiola*, 718 F.3d 692, 698 (7th Cir. 2013) (citing *Santiago v. Walls*, 599 F.3d 749 (7th Cir. 2010), and explaining that gathering evidence was one of several challenges a *pro se* inmate litigant faced). Accordingly, just as Plaintiff's failure to depose Dr. Siddiqui does not demonstrate a lack of diligence on Plaintiff's part, the Court will not fault Plaintiff for failing to utilize an alternative method of deposing Dr. Siddiqui that was beyond his personal capabilities.

Moreover, after Plaintiff was recruited counsel, there can be no doubt that counsel acted promptly and diligently. From the very first time Plaintiff's recruited counsel appeared before the Court, counsel immediately alerted the Court to the need to depose

Dr. Siddiqui (*see* Doc. 119). And just eight days after first attending a Status Conference, counsel filed the instant Motion to Conduct Limited Additional Discovery (Doc. 120). Additionally, Plaintiff's motion included an affidavit prepared by counsel that specified reasons — such as needing to understand Dr. Siddiqui's treatment decisions, mental state, and responsibilities — as to why Plaintiff could not adequately present facts to oppose Defendants' motion without deposing Dr. Siddiqui (*see* Doc. 120-1). In fact, Defendants' own Motion for Summary Judgment supports Plaintiff's contentions as to the substantial need to depose Dr. Siddiqui because it repeatedly cites an affidavit prepared by Dr. Siddiqui (Doc. 111-2) to support Defendants' Statement of Undisputed Material Facts and corresponding summary judgment arguments (*see, e.g.*, Doc. 111 at pp. 2-17, 22-26).

Consequently, the Court finds that both Plaintiff and his recruited counsel were diligent and therefore, good cause exists to amend the scheduling order to allow Plaintiff's recruited counsel to depose Dr. Siddiqui. Furthermore, given the significance of Dr. Siddiqui's deposition testimony, as well as his affidavit accompanying Defendants' motion, the Court concludes that Plaintiff would suffer prejudice "in a manner reasonably likely to alter the outcome" of his case if recruited counsel were not provided with an opportunity to depose Dr. Siddiqui. *See Santiago v. Walls*, 599 F.3d 749, 766 (7th Cir. 2010) (concluding that under the specific facts of that case, "that the assistance of counsel during discovery could have strengthened Mr. Santiago's case 'in a manner reasonably likely to alter the outcome.'"); *James v. Eli*, 889 F.3d 320, 331 (7th Cir. 2018) ("Therefore, on the whole, a lawyer appointed in time to help plaintiff with discovery could have potentially helped him present sufficient facts to create a genuine issue about

why defendants ... advised a continuation of ineffective treatments that prolonged his pain.") (internal quotation marks and citations omitted). Accordingly, Plaintiff's Motion to Conduct Limited Additional Discovery is GRANTED as to his request to depose Dr. Siddiqui (Doc. 120).

## II.    *30(b)(6) Deposition of a Wexford Representative*

Plaintiff similarly argues that good cause exists to allow him to conduct a Rule 30(b)(6) deposition of a Wexford representative (Doc. 120 at p. 7). Plaintiff further contends that, due in part to Defendants' refusal to produce materials Plaintiff requested related to Wexford's policies, the record is unfairly devoid of evidence to support Plaintiff's *Monell* claim in Count 2 (*Id.*). In response, Defendants aver that Plaintiff's request to depose a Wexford representative must be denied because "Plaintiff's boilerplate *Monell* claims against Wexford lack a specific factual basis, the burden of preparing a witness for a Rule 30(b)(6) deposition is much greater than that of preparing a fact witness, and the deposition is likely to entail further discovery motion[.]" (Doc. 121 at p. 6). Defendants also contend that Plaintiff's own deposition testimony demonstrates the lack of merit as to his *Monell* claim (*Id.* at pp. 7-8).

The Court need not rehash its prior findings as to the diligence of Plaintiff and his counsel. Put simply, just as Plaintiff's failure to depose Dr. Siddiqui did not demonstrate a lack of diligence, the Court finds the same is true for Plaintiff's failure to depose a Wexford representative prior to the close of discovery. Similarly, the Court finds that Plaintiff's recruited counsel was diligent in seeking to depose a Wexford representative pursuant to Rule 30(b)(6) after being recruited by the Court.

Moreover, the Court finds that the prejudice to Wexford of having to prepare a Rule 30(b)(6) representative is substantially outweighed by the prejudice Plaintiff would face by not being permitted to conduct such a deposition. First and foremost, Plaintiff has established that he attempted to timely obtain discovery materials related to Wexford's policies and practices (*see, e.g.*, Doc. 104 at p. 3) (Plaintiff's *pro se* Motion to Compel seeking, among other things, Wexford's policies related to collegial review). Defendants' response to that motion further demonstrates that a dispute existed as to the discovery of Wexford's policies at a time when discovery was still ongoing (Doc. 107 at pp. 2-4). And while that Motion to Compel was ultimately denied as moot because Plaintiff was recruited counsel, the Court's denial specifically stated that "Plaintiff's appointed counsel may refile any of those motions as counsel deems necessary." (Doc. 109).

Thus, not only does good cause exist to extend discovery deadlines to allow for the deposition of Wexford representative, but insofar as it relates to the discovery of Wexford's policies and practices related to the treatment of Plaintiff's shoulder injury and the provision of outside care (including collegial review policies), it is readily apparent that this was an ongoing dispute prior to the close of discovery (*Id.*; *see also* Doc. 104 at p. 3). *See Johnson v. Haskell*, 24-1156, 2025 WL 1000160, at *3 (7th Cir. Apr. 3, 2025) ("Because Johnson raised the issue of needing further discovery and why, and he tried to issue requests for the items he sought, he acted in a 'diligent, sensible, and sequenced manner.'"). On top of that, it was a discovery dispute that the Court indicated could be

refiled after recruited counsel appeared (Doc. 109).[4] And crucially, as far as the Court can discern (*see, e.g.*, Doc. 121 at pp. 9-10), those documents were not provided to Plaintiff after he was recruited counsel (*see also* Doc. 122 at p. 2). The lack of any discovery to those documents demonstrates the significant prejudice Plaintiff would face were he not allowed to depose a Wexford representative pursuant to Rule 30(b)(6). Plaintiff's *Monell* claims hinges on his ability to establish that Wexford's policies were to blame for the denial of meaningful treatment for his shoulder injury (*see* Doc. 16 at pp. 3-4). Thus, it is self-evident why obtaining evidence as to those policies, both as written and as applied in practice, is necessary to fully and fairly adjudicate that claim. Plaintiff's counsel has also provided an affidavit attesting to the necessity of obtaining this evidence to prevail on his *Monell* claim (Doc. 120-1).

Moreover, while Defendants will suffer some prejudice from having to prepare a Rule 30(b)(6) representative at this stage of proceedings, the Court finds Defendants are partially to blame for the prejudice they now seek to avoid. Namely, Defendants refused to provide Plaintiff with any requested Wexford policy due to their belief that the request was vague, overbroad, and posed safety and security concerns – including the "clear risk that custody officers might take copies of Wexford written policies in Plaintiff's possession and let them fall into the wrong hands." (Doc. 107 at p. 4). In other words, rather than working with the then *pro se* Plaintiff to try to find a solution that allowed Defendants to produce some of Wexford's policies in a narrow and controlled manner,

---

[4] Of course, the prior discovery dispute related to the production of documents rather than a Rule 30(b)(6) deponent.

Defendants instead categorically refused to produce any of Wexford's written policies (*see* Doc. 122 at p. 2; *see also* Doc. 107 at p. 4).

Ironically, Defendants have now proposed an alternative to conducting a Rule 30(b)(6) deposition wherein they would produce certain Wexford policy documents (Doc. 121 at pp. 9-10). That is precisely what Plaintiff previously sought during discovery but Defendants categorically refused to produce the documents (*see* Docs. 104, 107). Accordingly, the Court will allow Plaintiff to conduct a Rule 30(b)(6) deposition of a Wexford representative. Defendants chose to argue that it was impermissible to produce any Wexford policy documents to Plaintiff. As a result, it seems only fair that they must now be prepared to discuss those policies through a Rule 30(b)(6) deposition. Ultimately, the prejudice Defendants now face is of their own making.[5] Accordingly, Plaintiff's Motion to Conduct Limited Additional Discovery is GRANTED as to his request to depose a Wexford representative pursuant to Rule 30(b)(6) (Doc. 120).

III.     *Plaintiff's Supplemental Medical Records and Motion to Supplement*

Finally, Plaintiff's Motion for Leave to Conduct Additional Limited Discovery also requests leave to "belatedly disclose medical records from Plaintiff's outside treaters that are absent from the medical records heretofore produced by Defendants." (Doc. 120 at p. 2). Defendants' Response to that discovery request indicated that "Defendants have no opposition to Plaintiff's request for additional medical records. Plaintiff indicated he has subpoenaed the additional records. Defendants have no objection to this so long as

---

[5] Defendants also raise several substantive arguments as to why Plaintiff's *Monell* claim lacks merit (*see* Doc. 121 at p. 7). However, those merits-based arguments are more appropriately raised in a motion for summary judgment after Plaintiff has had an opportunity to review evidence of Wexford's policies.

Defendants receive a copy and are granted leave to use these records in any reply memorandum that may be necessary." (Doc. 121 at p. 6). However, as evinced by Plaintiff's later-filed Motion to Supplement Summary Judgment Record, Plaintiff did not receive those records from NorthShore University HealthSystem ("NorthShore") until October 31, 2025 (Doc. 126, p. 2). By that time, Plaintiff had already filed his Response in Opposition to Defendants' Motion for Summary Judgment and Defendants had filed their Reply in Support (*see* Docs. 124, 125). Due to that delay and the completion of briefing on Defendants' Motion for Summary Judgment, Defendants changed their position and opposed Plaintiff's motion to supplement the summary judgment record (Doc. 127). Specifically, Defendants now argue that Plaintiff should not be permitted to supplement the summary judgment record with those medical records because summary judgment briefing has concluded and they will no longer have an opportunity to address those records or any corresponding statement of fact (*Id.*).

The Court finds Plaintiff's arguments to be more compelling, and therefore, GRANTS Plaintiff's request to conduct additional, limited discovery regarding these medical records (Doc. 127). Again, Defendants previously consented to the discovery of these supplemental records (Doc. 122 at p. 6) and their newfound opposition is premised upon an inability to respond to those records (*see* Doc. 127). Yet, for the reasons discussed above, the Court has already determined that Plaintiff will be permitted to depose Dr. Siddiqui and a Wexford representative.

Crucially, in light of these two additional depositions that will be conducted, the Court believes the prudent course of action is to require Defendants to refile their

summary judgment motion after those depositions have been completed. *See Ferguson v. Cook Cnty., Illinois*, 349 F.R.D. 210, 213 (N.D. Ill. 2025) (Granting the plaintiff's motion to reopen discovery for good cause and then holding that pursuant to "Rule 56(d), defendants' pending motions for summary judgment are denied without prejudice because they will, in all likelihood, need to be re-briefed following additional discovery."). The Court does not make this decision lightly, but believes such a result is necessitated by the potential significance of the two additional depositions that are to be conducted, and the Court's strong desire to ensure this action is determined on the merits and not due to procedural concerns. *See Id.* Accordingly, Defendants' pending Motion for Summary Judgment is DENIED as MOOT without prejudice (Doc. 110).

In light of this determination and Defendants' previously expressed acquiescence to the late discovery of Plaintiff's outside medical records so long as they had an opportunity to address them in summary judgment briefing (*see* Doc. 121 at p. 6), the Court GRANTS Plaintiff's request to conduct additional, limited discovery regarding these medical records (Doc. 127). Consequently, because Defendants will be required to file a new (or renewed) Motion for Summary Judgment after the additional limited discovery discussed in this Order is completed, Plaintiff's later-filed Motion to Supplement Summary Judgment Record is DENIED as MOOT (Doc. 126).

## CONCLUSION

For the reasons discussed above, Plaintiff's Motion to Conduct Limited Additional Discovery is GRANTED (Doc. 120) and Plaintiff's Motion to Supplement Summary Judgment Record is DENIED as MOOT (Doc. 126).

Additionally, in light of the Court's discovery rulings and their likely impact upon the parties' summary judgment briefing, Defendants' Motion for Summary Judgment is DENIED as MOOT without prejudice (Doc. 110). Defendants may file a new or renewed motion for summary judgment after the limited, additional discovery discussed in this Order has been completed.

The deadline for Plaintiff to conduct the depositions of Dr. Siddiqui and a Wexford representative is **May 18, 2026**. Thereafter, Defendants' deadline to file a new (or renewed) Motion for Summary Judgment is **June 17, 2026**. Plaintiff shall then have 30 days from the date Defendants' motion is filed to file a Response in Opposition. Finally, Defendants shall have 14 days from the date Plaintiff's response is filed to file a Reply in Support of their motion.

**IT IS SO ORDERED.**

**DATED:** March 17, 2026

s/ Mark A. Beatty
**MARK A. BEATTY**
**United States Magistrate Judge**